**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-CV-60201

SN1017, LTD.,
a foreign entity,

Plaintiff,

v.

WORLD JET, INC., a Florida corporation, and
LOGOS AVIATION, INC., a Florida corporation,

Defendants.

_________________________________________/

## COMPLAINT

Plaintiff SN1017 LTD. ("**Plaintiff**"), by and through undersigned counsel, hereby sues Defendants WORLD JET, INC. ("**World Jet**") and LOGOS AVIATION, INC. ("**Logos**"), and in support alleges as follows:

## INTRODUCTION

1. This is an action by Plaintiff against Defendants World Jet and Logos for breach of contract, breach of the duty of good faith and fair dealing, negligence, unjust enrichment, and for an accounting.

2. World Jet is a contractor who holds itself out as an entity able to perform repairs and refurbishment of aircraft operating throughout the United States and the world.

3. Logos likewise holds itself out as a contractor capable of performing repair and refurbishment work on various types of aircraft.

4. Both Defendants operate in Fort Lauderdale, Florida.

5. Plaintiff owns a Gulfstream IV aircraft bearing Registration No. P4-PPP (hereinafter, the "**Aircraft**"), which it purchased in the summer of 2021.

6. Plaintiff hired World Jet to perform significant refurbishment work on the Aircraft to Plaintiff's specifications.

7. Shortly after World Jet took delivery of the Aircraft, a course of events arose whereby World Jet made several unauthorized alterations to the project, going so far as to move the Aircraft from Ft. Lauderdale, Florida to Lakeland, Florida without Plaintiff's consent.

8. Further, World Jet and its chosen subcontractors, including Logos, failed to perform the work required by Plaintiff for the Aircraft's refurbishment, which caused significant delays and allowed overruns to the overall cost of the project to take place.

9. As a result of both Defendants' actions and inactions, Plaintiff has suffered significant damages.

## PARTIES, JURISDICTION AND VENUE

10. Plaintiff is a Bahamian entity with its principal place of business located in Nassau, Bahamas. Plaintiff owns the Aircraft that forms the basis of this action. Neither Plaintiff nor its owners are citizens of Florida for purposes of diversity of citizenship. *See* 28 U.S.C. § 1332(c).

11. Defendant World Jet, Inc. is a Florida corporation with its principal place of business located at 1020 NW 62nd Street, Fort Lauderdale, Florida 33309. World Jet is a citizen of Florida for purposes of diversity of citizenship.

12. Defendant Logos Aviation, Inc. is a Florida corporation with its principal place of business located at 5900 NW 24th Way, Hangar B, Fort Lauderdale, Florida 33309. Logos is a citizen of Florida for purposes of diversity of citizenship.

13. This Court may exercise jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000.00 and complete diversity of citizenship exists between Plaintiff and Defendants.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

## FACTUAL ALLEGATIONS

### Plaintiff Hires World Jet to Refurbish the Aircraft

15. Plaintiff purchased the Aircraft in June 2021.

16. Following that purchase, Plaintiff made plans to substantially refurbish the interior and exterior of the Aircraft (hereinafter, the "**Project**"), to include re-painting the Aircraft's fuselage and repurposing its interior cabin.

17. Jets4UDirect, a corporation organized and located in the United Kingdom, and its principal, Mr. Av Manku, (hereinafter, "**Agent**") served as Plaintiff's agent for the Project.

18. Through its Agent, Plaintiff contacted World Jet about the Project. World Jet assured Plaintiff and Agent that World Jet could and would complete the Project.

19. To that end, Plaintiff and World Jet agreed as follows:

a) World Jet agreed to complete the Project in accordance with Plaintiff's specifications;

b) Plaintiff would wire funds to World Jet sufficient to complete the Project;

c) The Project would be finished on or before January 31, 2022; and

d) Should any additional work associated with the Project become necessary, World Jet would first obtain written approval and authorization from Plaintiff or Plaintiff's Agent before any such work was undertaken.

20. The above-listed agreement (hereinafter, the "**Agreement**") required World Jet to send invoices for the work performed by it or its chosen subcontractors during the Project as each phase was completed to Plaintiff's specifications.

**World Jet Fails to Perform**

21. Pursuant to the Agreement, Plaintiff, shortly after the Aircraft's purchase, delivered the Aircraft to World Jet in Ft. Lauderdale, Florida.

22. Plaintiff complied with its payment obligations under the terms of the Agreement.

23. In total, Plaintiff paid World Jet $1,071,980.00 for the Project.

24. World Jet, without Plaintiff's authorization, moved the Aircraft from Ft. Lauderdale to Lakeland, Florida to purportedly utilize the services of a subcontractor to paint the Aircraft and refurbish certain portions of the interior cabin.

25. Upon information and belief, World Jet chose the subcontractor in Lakeland for purely economic reasons, and in the hopes that utilization of a cheaper subcontractor would result in World Jet retaining a larger portion of the fee paid to it by Plaintiff for the Project.

26. World Jet failed to inform Plaintiff that the Aircraft had been moved, and World Jet never sought Plaintiff's approval to do so.

27. The subcontractor selected by World Jet in Lakeland was unable to perform the work required by Plaintiff for the Project. For example, the chosen subcontractor in Lakeland did not have the capacity to paint the Aircraft at the time World Jet delivered the Aircraft, and, as a

result, the Aircraft remained sitting in a hangar while the chosen subcontractor completed other work, which delayed the Project.

28. World Jet served as Plaintiff's "eyes and ears" for the Project because Plaintiff's Agent was restricted from traveling to the United States due to COVID and the resulting legal restrictions on travel from the United Kingdom then in effect. Plaintiff's Agent could not, therefore, directly evaluate the progress of the Project and had to rely on World Jet for updates.

29. During this time, Plaintiff continuously sought updates from World Jet about the progress of the Project. World Jet misled Plaintiff about the Project's progress, providing inaccurate and misleading information to Plaintiff and Agent.

30. Among other things, World Jet failed to disclose that work on the Project had effectively come to a halt because of World Jet's chosen subcontractors' inability to perform.

31. World Jet continued to misrepresent the progress of the Project throughout the Summer of 2021, making statements misleading Plaintiff and Agent into believing that the Project was generally on schedule.

32. In reality, the Project was behind schedule, and World Jet had no intention of completing the Project and returning the Aircraft by the scheduled delivery date.

**Agent Travels to US to Inspect Aircraft**

33. In March 2022, the United Kingdom's COVID-19 travel ban expired, and Plaintiff's Agent traveled to Florida to evaluate the progress of the Project.

34. It was then that Plaintiff learned that the Aircraft had been moved from Ft. Lauderdale to Lakeland, Florida without Plaintiff's authorization.

35. Plaintiff's Agent traveled from Ft. Lauderdale to Lakeland, Florida in March 2022 and learned, upon seeing the Aircraft, that the Project was woefully behind schedule and that parts of the Project had not even been started, all contrary to the representation of World Jet.

36. Further, the work that had been performed on the Aircraft, both by World Jet and its chosen subcontractors, was unsatisfactory and deficient.

37. For example, the painting was grossly behind schedule, the interior refurbishments were incomplete, and the plans for modifying the Aircraft's interior did not match the specifications Plaintiff and Agent provided to World Jet.

38. Agent also discovered that World Jet had unilaterally altered the layout of the interior of the Aircraft, without Plaintiff's authorization, and directed its chosen subcontractors to ignore Plaintiff's specifications.

39. Plaintiff, through its Agent, immediately thereafter demanded that the Aircraft be returned to Ft. Lauderdale, Florida.

**Logos' Negligent Work on the Aircraft**

40. After the Aircraft returned to Ft. Lauderdale, Plaintiff demanded that World Jet utilize a competent subcontractor to diligently complete the Project in accordance with Plaintiff's specifications.

41. Logos, which World Jet had previously engaged to perform other work on the Aircraft as part of the Project, agreed to perform the interior refurbishment work.

42. The work performed by Logos on the Aircraft would prove to be unsatisfactory and deficient. Much of the work performed on the Aircraft by Logos fell below the standard of care for an Aircraft of this type.

43. After the Aircraft returned to Ft. Lauderdale, World Jet refused to pay Logos for the work it performed, even though World Jet remained in possession of the funds previously paid by Plaintiff for such work on the Project.

44. Logos refused to release possession of the Aircraft to Plaintiff until Logos received payment for its services. As a result of World Jet's failure to pay, Logos was able to hold the Aircraft hostage, refusing to release it until Logos was paid, causing further delays.

45. Plaintiff was ultimately forced to directly pay Logos to cover the costs and fees charged by Logos in refurbishing the Aircraft due to World Jet's refusal to pay Logos for such services, despite World Jet having previously received payment from Plaintiff to perform such work, which funds World Jet retained despite not having performed.

**Plaintiff Finally Regains Possession of the Aircraft**

46. On or about October 7, 2022, Plaintiff regained possession of the Aircraft and arranged for its pilots to fly the Aircraft from Florida to the United Kingdom.

47. On the first attempt to fly the Aircraft to the United Kingdom, the Aircraft's defects required an emergency diversion to Boston, Massachusetts.

48. Before flying back to the United Kingdom from Boston, Plaintiff incurred additional costs in having to replace parts and make repairs on the Aircraft's mechanical systems, which should have been done during the Project.

49. Immediately upon its return to the United Kingdom, and after utilizing the services of a third party to inspect the Aircraft, Plaintiff discovered a multitude of problems with the Aircraft stemming from deficiencies and inadequacies in work performed on the Aircraft in Florida by World Jet, Logos, and/or other subcontractors selected by World Jet.

50. World Jet breached the Agreement by failing to perform the Project pursuant to the terms of that Agreement, in accordance with Plaintiff's specifications, or within the legally applicable standards of care for an aircraft of this type, and despite being paid more than $1 million for the Project.

51. World Jet likewise failed to retain subcontractors, including Logos, that could perform the Project in accordance with Plaintiff's requirements.

52. To this day, Plaintiff continues to discover problems with the work performed on the Aircraft while in Florida.

53. Attached hereto as **Exhibit A** is an initial list of additional work, including cost estimates, to be completed on the Aircraft to rectify or mitigate the improper and negligent work performed by World Jet, its chosen subcontractors, and Logos.

54. The problems include:

a) Substandard wiring;

b) Cabin pressurization issues at higher cruise altitudes and upon initiation of initial descent protocols;

c) Water leaks in the main cabin;

d) Insufficient lighting in the cockpit;

e) Missing interior partition door;

f) Misaligned cupboards and cabinetry, including improperly affixed hinges;

g) Negligent installation of carpentry throughout the cabin;

h) Failure of the intercom systems;

i) Unacceptably low pressure in the emergency gear reserve;

j) Inoperable windshield wipers with no rain repellant applied; and

k) Missing covers for the Aircraft's pitot tubes.

55. Further, Defendants did not provide Plaintiff with the required paperwork setting out the basis on which the work was performed on the Aircraft and failed to inform the relevant authorities in Aruba of the total refurbishment, which have placed in jeopardy the Aircraft's certificate of airworthiness.

56. The problems listed above, among others, were the direct and proximate cause of World Jet's and Logos' negligence and otherwise deficient work performed on the Aircraft.

57. Plaintiff continues to incur fees, costs, and expenses in identifying all of the deficient problems with the Aircraft resulting from the deficient work performed by Defendants.

58. All conditions precedent to the filing of this action have been satisfied, excused and/or waived.

59. Plaintiff has retained the undersigned law firm to prosecute this action and agreed to pay reasonable fees and expenses for such services.

**COUNT I**
**BREACH OF CONTRACT**
**(Against World Jet, Inc.)**

Plaintiff re-alleges and incorporates paragraphs 1 through 59 above as if fully set forth herein.

60. The Agreement is a valid and enforceable contract.

61. World Jet materially breached the Agreement.

62. Among World Jet's breaches of the Agreement, are:

a) failing to complete the Project in a timely and workmanlike manner;

b) failing to complete the Project in accordance with Plaintiff's specifications;

c) changing the scope of the Project on several occasions without Plaintiff's authorization;

d) moving the Aircraft to Lakeland, Florida;

e) utilizing subcontractors ill-equipped to perform the work required by the Project;

f) unnecessarily causing multiple delays and unnecessarily forcing Plaintiff to incur additional, unnecessary costs and fees;

g) charging exorbitant additional sums for work World Jet claimed was performed, but which was either not performed or was negligent;

h) failing to complete the Project on time;

i) failing to pay subcontractors;

j) failing to properly supervise and inspect the work being done on the Aircraft by Plaintiff's subcontractors;

k) failing to adequately supervise subcontractors and the work being done on the Aircraft;

l) retaining all of the funds paid by Plaintiff even though much of the work was not performed or was done deficiently;

m) breaching the required duty of care owed to Plaintiff in providing services for the Project or the Aircraft, providing services below the standard of care used by similar professionals in the community under similar circumstances, and failing to provide services in a good and workmanlike manner; and

n) Failing to account for or refund any portion of the over $1 million paid by Plaintiff to World Jet.

63. As a direct and proximate result of World Jet's and Logos' breaches, the Aircraft was damaged or otherwise needed corrective work and Plaintiff was deprived of the use of the Aircraft for an extended period.

64. Plaintiff has suffered and continues to suffer damages as a direct and proximate cause of World Jet's breaches of the Agreement and its failure to complete the Project. Among other things, Plaintiff has had to pay for corrective services and repairs to the Aircraft.

WHEREFORE, Plaintiff, SN1017 LTD., demands that judgment be entered in its favor and against Defendant WORLD JET, INC. for money damages, including compensatory, consequential, incidental, and special damages, pre- and post-judgment interest, court costs, and such other and further relief as the Court deems just and proper.

**COUNT II**
**BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**
**(Against World Jet, Inc.)**

Plaintiff re-alleges and incorporates paragraphs 1 through 59 above as if fully set forth herein.

65. Under Florida law, the implied covenant of good faith and fair dealing is part of every contract, including the Agreement.

66. In addition to breaching the Agreement, World Jet breached the implied covenant of good faith and fair dealing by:

a) concealing from Agent and Plaintiff that the Project was woefully behind schedule;

b) providing inaccurate reports and information to Plaintiff or Agent after World Jet took possession of the Aircraft;

c) moving the Aircraft without Plaintiff's or Agent's consent;

d) hiring ill-equipped or unqualified subcontractors which were cheaper for World Jet, so that it could make more profit;

e) refusing to pay Logos for the work it performed on the Aircraft;

f) failing to refund to Plaintiff at least a portion of the funds paid to World Jet by Plaintiff for the Project, representing the portion of the work World Jet did not perform or undertake; and

g) failing to cooperate with Agent to bring the Project to conclusion.

67. World Jet's breaches of the implied duty of good faith and fair dealing has caused damages to Plaintiff, including consequential, incidental and special damages necessitation Plaintiff to hire professionals in the United Kingdom to fix the resulting problems with the Aircraft.

WHEREFORE, Plaintiff, SN1017 LTD., demands that judgment be entered in its favor and against Defendant WORLD JET, INC. for money damages, including compensatory, consequential, incidental, and special damages, pre- and post-judgment interest, court costs, and such other and further relief as the Court deems just and proper.

**COUNT III**
**NEGLIGENCE**
**(Against Both Defendants)**

Plaintiff re-alleges and incorporates paragraphs 1 through 59 above as if fully set forth herein.

68. The services and work for the Project or otherwise on the Aircraft (the "**Services**") provided by World Jet and Logos fell below the minimum standard of care, including the required standard of care used by similar professionals in the community under similar circumstances.

69. World Jet and Logos at all material times each owed Plaintiff a duty to perform all Services consistent with the required legal standard of care, including the standard of care used by

similar professionals in the community under similar circumstances, and/or to perform the Services in a good and workmanlike manner.

70. In providing the Services, World Jet and Logos breached the duty of care they owed to Plaintiff.

71. World Jet and Logos failed to exercise due care in rendering the Services and failed to perform the Services in a good and workmanlike manner.

72. World Jet and Logos were negligent in performing the Services.

73. World Jet was negligent in its selection and supervision of subcontractors.

74. As a direct and proximate result of World Jet's and Logos' breaches, the Aircraft was damaged or otherwise needed corrective work and Plaintiff was deprived of the use of the Aircraft for an extended period.

75. As a direct and proximate result of World Jet's and Logos' negligence, Plaintiff has been forced to pay for corrective works and repairs to the Aircraft and has suffered damages, including consequential, special and economic damages.

76. World Jet and Logos are jointly and severally liable for at least some of the damages suffered by Plaintiff.

WHEREFORE, Plaintiff, SN1017 LTD., demands that judgment be entered in its favor and against Defendants WORLD JET, INC. and LOGOS AVIATION, INC., jointly and severally, for money damages, including compensatory, consequential, incidental, and special damages, pre- and post-judgment interest, court costs, and such other and further relief as the Court deems just and proper.

**COUNT IV**
**UNJUST ENRICHMENT**
**(Against World Jet, Inc.)**

Plaintiff re-alleges and incorporates paragraphs 1 through 59 above as if fully set forth herein.

77. Plaintiff conferred a benefit on World Jet by advancing $1,071,980.00 in wire transfers paid to World Jet, much of which was never used by World Jet for the Project as intended.

78. World Jet had full knowledge of the benefit conferred on it by Plaintiff.

79. World Jet voluntarily accepted and retained the benefit conferred by Plaintiff.

80. The circumstances are such that it would be inequitable for World Jet to retain the full amount of the benefit conferred without refunding Plaintiff the value thereof.

WHEREFORE, Plaintiff, SN1017 LTD., demands that judgment be entered in its favor and against Defendant WORLD JET, INC. for money damages in the amount of the value conferred on World Jet, plus pre- and post-judgment interest, court costs, and such other and further relief as the Court deems just and proper.

**COUNT V**
**ACCOUNTING**
**(Against World Jet, Inc.)**

Plaintiff re-alleges and incorporates paragraphs 1 through 59 above as if fully set forth herein.

81. Plaintiff reposed its trust and confidence in World Jet by entrusting it with the Aircraft and the Project, as well as by wire transferring $1,071,980.00 in the aggregate (the "**Funds**") for the work to be performed on the Aircraft as part of the Project.

82. World Jet was entrusted with control over the Funds to make appropriate payments to its chosen subcontractors during the course of the Project.

83. World Jet accepted the Funds, but did not use all of the Funds for the Project or to perform work on the Aircraft.

84. World Jet has refused to provide Plaintiff with an accounting reflecting how World Jet used the Funds, how much World Jet paid to subcontractors, and how much World Jet has retained. This information is only in World Jet's possession and it occupies a position of superior knowledge in this regard.

85. Plaintiff is entitled to a refund of at least a portion of the Funds, inclusive of the those Funds which World Jet did not use for the Project or the Aircraft, and which World Jet has instead wrongfully retained for its own pecuniary gain.

86. A full and proper accounting is necessary to determine the amount of the Funds that were not used, as intended, for the Project and the Aircraft and which should be refunded to Plaintiff.

87. A judicial determination and settlement of the Funds is appropriate under the Court's equitable powers to settle the amount of the Funds properly used by World Jet for their intended purposes and the amount of the Funds that should be refunded to Plaintiff.

88. Plaintiff has no adequate remedy at law.

89. Plaintiff requests that this count be advanced on the Court's docket.

WHEREFORE, Plaintiff, SN1017 LTD., demands an accounting by the Court of Defendant WORLD JET, INC. transactions pertaining to the Funds, the Project and the Aircraft, inclusive of all books, records, accounts, financial statements, payments, and items, a determination of a true and accurate account of all transactions arising out of and in connection with the Project or the Aircraft, a determination of the Funds that must be refunded to Plaintiff, an

award of prejudgment interest and Plaintiff's costs of suit, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

**AVILA RODRIGUEZ HERNANDEZ MENA & GARRO LLP**
*Attorneys for Plaintiff*
2525 Ponce de Leon Boulevard, Suite 1225
Coral Gables, Florida 33134
Office: (305) 779-3560

By: s/ Daniel O. Mena
Daniel O. Mena
Florida Bar No. 59579
dmena@avilalaw.com
Andrew E. Beaulieu
Florida Bar No. 115097
abeaulieu@avilalaw.com
jabaunza@avilalaw.com